Thank you, Your Honor. May it please the Court, I'm John Coppell with the Appellate Staff, Civil Division, U.S. Department of Justice, and I'm representing the Appellants, Departments of Veterans, Department of Veterans Affairs and its officials sued in their official capacity in this case. There are two issues before the Court on this appeal. First, the district court erred in effectively invalidating portions of two VA regulations, notwithstanding the fact that under 38 U.S.C. 502, the U.S. Court of Appeals for the Federal Circuit has exclusive jurisdiction to review challenges to VA regulations. But Counsel, wasn't Judge Henderson really just construing the consent decree that he had issued previously and over which he maintained jurisdiction? Well, Your Honor, certainly the decision involves consideration of the interaction between the consent decree and the various statutes, the Agent Orange Act of 1991 and the Veterans Benefits Extension Act of 2001, along with the consent decree. So certainly, in part, he was construing the consent decree, but notwithstanding that, because this is a challenge to a VA regulation, only the Federal Circuit has jurisdiction over it. Well, as I understand it, the plaintiffs did not challenge the regulation. You brought it in as a defense. Isn't that correct? No, Your Honor. I respectfully disagree with that characterization. The plaintiff filed a motion for contempt after we – after the regulation was promulgated. And that's what – that is what initiated the whole process in the district court, which then converted that motion into a motion for clarification. He, in effect, didn't create it as a motion for contempt. He said, there's a motion to clarify my decree, and now I'm going to clarify it. And all he had to do was look at his decree and the facts and clarify the decree. Yes, Your Honor. He converted it into a motion for clarification. And so for the court, it was just your defense that it's a regulation that should have gone somewhere else. Well, Your Honor, yes. Of course, it's a matter of jurisdiction. And the consent – the district court's power to interpret a consent decree certainly can't trump the statutory decision of Congress to limit the jurisdiction of the federal courts. Your Honor, it's a question – is this a judicial review of a regulation, or is it a question of a consent decree, and is it within the – is it affected by your defense? Your Honor, it is certainly a question of the interaction between a regulation and a consent decree. But it necessarily involves – it necessarily involves the question of the validity of the regulation, because the regulation says that the retroactive benefits provision of the consent decree expires with the AOA. Yes, it certainly involves the scope of the regulation, but not its validity. Well, Your Honor, it does involve its validity. It clearly involves its validity because the regulations, both 38 CFR 3.816 and the CLL rule, specifically state that they don't apply to diseases that were service-connected after the expiration date of the AOA. So that is part of the regulation, and that is the part that the district court has held as inconsistent with the terms of the consent decree. There are two aspects to this. One Judge Noonan raised. The plaintiffs could perfectly well have proceeded with their position and their arguments without ever mentioning the regulation. They would have been perfectly happy just for Judge Noonan to – Judge Anderson to construe his decree and explain what the government's obligations are. Nobody would have had to look at the regulation except for your contention that the regulation interfered with the court pursuing its jurisdiction under the court decree. That's one issue, not whether the court can trump a statute, but whether a regulation can trump a court decree. But the second issue is that this regulation has made it very clear that it was attempting to implement the court decree. That was its purpose. It was to explain the court decree and implement it in accordance with the terms of the court decree. It wasn't trying to contradict the court decree. And then what happened was, two years later, the court explained that the court decree did not go out of existence at the time the office of the regulation thought that it did. And in order to implement the court decree as the regulation purported to want to do, the dates would have to be different. It would no longer be 2002. It would be 2015. So you read the court, the regulation, in connection with its intent and purpose. And under the new facts, that regulation would be different. So he didn't invalidate it. He just treated it as he viewed the regulation would be in light of the new circumstances, because the argument you said was that it only applied to the H.N. Orange Act. And for the time of the H.N. Orange Act. And what the court decree explained is the H.N. Orange Act was extended, and therefore the provisions of the regulation would be extended. But, Your Honor, that is flatly inconsistent with the language of the regulations, both in 3.816b2 and 3.816g. But the regulation was at a time when the department was saying and had a reasonable belief that the act had expired. It then became clear that the act had not expired. And there's nothing that the department did after it became clear that the act had not expired. But, Your Honor, the regulations were enacted after the AOA had expired, after the H.N. Orange Act of 1991 had expired. It never expired. After the sunset date, the original sunset date of the AOA, yes. But that turned out not to be when the act expired, because the VA was just wrong in thinking that the act expired even though it had been extended. Well, Your Honor, actually, one could argue that it in effect did expire, too. It was replaced by the Benefits Extension Act. No, no. It was a reasonable position to think that it had expired. It just happened to be wrong. But, well, of course, we should also soon turn to the merits. And it's the VA's decision on that point also was correct. Well, let's assume for purposes of this part of the argument that at the time the regulation was adopted, the VA thought that the act had expired incorrectly. Let's assume that. And they were trying to regulate the purpose of the regulation was to implement the act and to implement the decree, as it says repeatedly. That's the purpose of the regulation. Well, Your Honor, it was to explain the interaction between the Education Act, the Benefits Extension Act, and the consent decree. That is true, Your Honor. Well, it says at the introduction, each one of these pages I looked at, it's a purpose to implement the court decree. And frankly, counsel, when you're talking about a consent decree where you have the class on the one hand, the department on the other hand, and the judge who signed the decree, why can one party construe the consent decree without the consent of the other party and have that be definitive? Isn't it really Judge Henderson that should be construing what this means, subject to an appeal? Well, Your Honor, it wouldn't be definitive. The question is which court would then determine whether or not that interpretation was correct. The district court here or the Federal Circuit. And given that under 38 U.S.C. 502, it is clear that the Federal Circuit has exclusive jurisdiction. But again, as was discussed before, what you brought the appeal issue up, the other side is not they're not challenging the regulations. The court has clarified the meaning of the consent decree. It retained jurisdiction to do that, right? Yes, Your Honor. It certainly did. Okay. So that's what it did. So the court did not declare anything other than the meaning of the consent decree. And being mindful of the fact that Congress had not allowed the Agent Orange Act, I'll call it, to expire, it clarified that the intent of the court in the decree was that it extend to the term provided by the new Act. Why does that have anything to do with an appeal to the Federal Circuit? Nobody is challenging directly these regulations. Your Honor, this necessarily involves a direct challenge to these regulations because the regulations specify that the retroactive provisions terminate on the last day of the Agent Orange Act of 1991. And that is the VA promulgated these regulations, and then it was only after that that the plaintiffs went back to the district court and sought a ruling of contempt. But it was the VA did not initiate this legal process, this round of the legal process here. It acted appropriately as an administrative agency to issue regulations, and the plaintiffs then challenged them. And because they were challenging them effectively, no matter how one characterizes this, that challenge should have been brought in the Federal Circuit. Go ahead, please. You know, you have some possibility, but it is a matter of characterization, and you can see that there's a good deal of skepticism about your characterization. But let me go to the more important point. Isn't it outrageous for one party to a consent decree to stand on its own regulations as a way of getting out of the consent decree? But again, Your Honor, it does the VA is not doing that because its regulations would be subject to judicial review. No, no, it is doing it. It effectively gets out of what the judge presiding over the consent decree says is the meaning of the decree. You can't get away from that. You have unilaterally imposed your meaning on the decree. I can't understand how that can be tolerated. The plaintiffs haven't argued that it was inappropriate for the VA to regulate in this area. As a matter of fact, they have previously said in their consolidation. No, it's only when you manage to nullify a provision that they have some right to object. It's not a general objection to your regulating the administration of the agency. It's just when you, we say the administration, the VA, enacts something that is contrary to the meaning of a consent that they entered into. Well, Your Honor, of course, we disagree strongly on the merits with that, with that view, with the district court's conclusion that it is contrary to the consent decree. I understand that. And so you have that argument. But to then rely on your own regulations to extract you from the jurisdiction is what seems to me an outrage to common sense. Well, Your Honor, certainly I respectfully disagree with that view. I'd like to put your position in a more beneficent context. I don't, I'd like to think you were not trying to get out of the court orders, that you just made a mistake as to what the court order said, and that your regulation, if properly conformed to the court orders, would change the dates as the court did. What you say is in both the things I have here, the purpose of this rule is to reflect the requirements of court orders in a class action case. No doubt that's this case. The other one says the purpose, this section states effective dates rules required by orders of a United States district court in the class action case of Nehmer. Now, you just made a mistake as to what the court orders required. Now, you didn't, it was perfectly reasonable to do it at the time. At the time you did it, you thought that the decree had expired or that the Agent Orange Act had expired. Now, you may argue that it really did, but assuming that it really didn't, then the purpose of these regulations was to put in the dates required by the decree. And once you see there's a mistake in the regulation, then you're not invalidating it, you're just conforming the regulation to the court order. Well, and I think our position is clear that in our view this is still an effective invalidation of the regulations, and therefore it's for the Federal Circuit to decide. It's conforming the regulation to the court orders. But again, that is still something that belongs in the Federal Circuit. It's not invalidating it, it's not attacking it, it's just bringing it up to date with the new ruling of the court. But, Your Honor, VA regulations under 502 are reviewable exclusively in the Federal Circuit. But I'm not reviewing it, it's just modifying it. But that can't be done. To conform it to the decree, which is what the regulation says you want to do. Well, yes, Your Honor, but of course that can't be done without reviewing it. But perhaps we should move on to the merits, because my time is short. We won't cut you too short on this case. It's important. Oh, okay. Well, then I appreciate that. But let's get to the merits. Turning to the merits, it is clear from both from this Court's prior decision, quoting the district court's prior ruling with approval, that the the the But that was true at the time. It's like your regulation. At the time, our court said that was, it was quoting the district court, which didn't know the Act was going to be extended. So it was true at the time that the expiration date was the expiration date in the Act as of that date. After the district court said that, the expiration date was changed by Congress. So it was no longer the case. What's so What does that prove? Well, Your Honor, that of course, the Court, this Court made that statement after the application was filed. Yes, but it was quoting the district court, because the district court had said it. But more importantly, the district court subsequently in its in its ruling, its merits ruling in this case, specifically stated that it was true that the parties and the court had a mutual expectation at the time this consent decree was entered into in 1991, that it would end with the sunset date of the of the Agent Orange Act of 1991. Now, that should be dispositive here with respect to the merits under traditional standards for interpreting consent decrees, because it was that understanding at the time the consent decree was entered into that must control, not the not something informed by congressional action 10 years down the road. And that is really Well, the general rule, as I understand it, is if you put in a reference to a specific statute in an agreement, that that means the statute as it is at the time the controversy arises. And if the statute's been modified or amended, that still applies. Isn't that the general rule? With respect to interpretation of consent decrees and, indeed, contracts. With respect to contracts. If you have a contract that says this will be subject to the provisions of X Act, that when the dispute arises, you look at X Act as it is at the time of the dispute. Well, Your Honor, with only the California courts have ruled that only procedural statutes have that effect, not statutes that change the substantive obligations of the parties, which is what this one has done, as interpreted by the district court. The statute, the provision of the Agent Orange Act that the district court relies on, effectively, it only continued the methodology for determining whether how to service connect diseases under the Agent Orange Act. It did not purport to say anything about the Nehmer Consent Decree. Congress certainly could have done that, but there's absolutely no reference to the Nehmer Consent Decree, nor does the language of the Benefits Extension Act say anything about extending the Nehmer Consent Decree. All that Congress did was extend the methodology for service-connecting diseases and said that should continue until 2015. It didn't say anything about extending the retroactive benefits provisions of the consent decree. And it's simply a stretch, an impermissible stretch under the law regarding interpretation of consent decrees for a court to do that, because it imposes substantial additional substantive obligations with respect to payment of retroactive benefits that the court, the district court itself acknowledged was not within its expectation and the expectations of the parties in 1991 when the consent decree was entered into. So by virtue of that, the district court's interpretation is not all – is incorrect and it's unreasonable and erroneous as a matter of law. If there are no further questions, I would respectfully request a few minutes of rebuttal. You don't want to say anything about appellate jurisdiction? Oh, well, yes, Your Honor. I would be happy to address that as well, although we believe that it's clear under this Court's decision in Jeff D. v. Andrus that the district – this type of purported clarification order in post-judgment proceedings is reviewable both under 28 U.S.C. 1291 as a final decision and as – and under 1292A as an injunction. It's also reviewable under the practical finality doctrine that this Court has recognized that the district court is subject to a ruling from this Court and also – and under the rule that orders that have the practical effect of being an injunction are also subject to immediate appellate review. The holding to the contrary would require the VA to go into contempt in order to secure a ruling from this Court, and that certainly would not be warranted. Thank you, Your Honor. Good morning, Your Honors. My name is Bart Stichman. I represent the plaintiff class of Vietnam veterans and their survivors. There are several statements in the VA briefs that highlight the issues before the Court today. The first is on page 2 of its reply brief, where the VA states that its interpretation of the consent decree is a, quote, final rule of general applicability, unquote. That statement is both important and inaccurate. It's important because it's the only place in the – in its briefs that the VA recognizes that the jurisdiction of the Federal Circuit is not predicated on the mere fact that the VA used notice and comment procedures to issue a matter. The VA could, for example, publish a staff manual using notice and comment procedures, but these procedures would not automatically give the Federal Circuit jurisdiction to review a mere staff manual. Under the section the VA relies on, 502, Federal Circuit jurisdiction depends on the content of the matter, not on the procedures used. And that is because Section 502 provides the Federal Circuit with jurisdiction over an action of the VA secretary to which Sections 552A1 or 553 of Title V refer. Those parts of the APA refer to such matters as substantive rules of general applicability. So your argument is that you obviously don't have that here. That's right. The VA has just tried to embed an interpretation of the consent decree in a directive published after notice and comment processes, and that's not dispositive. For the Federal Circuit to have jurisdiction, putting aside the conflict with the district court's jurisdiction, the VA would have to be correct in alleging that this is a substantive rule of general applicability, which it's not. The consent decree is an order. Orders are not referred to in those parts of the APA. It's also a contract. Contracts are not referred to in those parts of the APA either. So why do you say this is not this regulation is not a regulation? Is it because it's not of general applicability or because of the content of the regulation? The regulation inside the regulation is an interpretation of the consent decree. Yes. For that to be subject to Section 502, it would have to be, and the government alleges it is, a substantive rule of general applicability when all it is is an interpretation of a court order. So you're saying that they simply mischaracterized what it is they've done there. Exactly, Your Honor. Turning to the merits, there are other statements that I'd like to address. When faced with the issue that the motion for clarification required the court to address, the district court, which had presided over implementation of the consent decree for 14 years, reasonably interpreted the language of paragraph 3, which says that any disease which may be service-connected in the future pursuant to Agent Orange Act Subsection B, to mean that as long as Congress leaves Subsection B in effect and as long as the VA service-connects a disability pursuant to Subsection B, then the disability or the disease is included within paragraph 3. Counsel, I'd like to pursue Judge Reinhart's questions to your opposing counsel on this wise. When the consent decree was entered into, my understanding of the law is that all existing statutes that are applicable are deemed incorporated by reference into the contract. Do you agree with that? As a general proposition, yes. Okay. And at the time that this particular consent decree was entered into, the law provided it was going to expire, I think, September 30th, 2002. Is that correct? Not exactly. There was a formula in the Act which future events would determine what it was, but it eventually turned out to be September. But it was – there was never a contemplation at the time that the consent decree was entered into that Congress was going to amend the Act and extend the term, was there? I think that under – as briefs talk about, Congress had a – especially the Veterans Affairs Committee, a history of creating a sunset date and then extending it thereafter. And it did so itself in the Agent Orange Act with regard to another provision. There's nothing in the contract itself in the decree that talks about that. That's correct. And that's – So the VA is correct at least to the extent, is it not, that at the time this was entered into, nobody really considered and certainly didn't reduce to writing the concept that this was going to be extended. I think the fact that the consent decree expressly incorporated one subdivision, subsection of the Agent Orange Act relates to that – the answer to that question. Because it didn't refer at all to the sunset provision. It only referred to the authority of the VA to service-connect diseases. And therefore, although it didn't expressly discuss what the impact of an extension would be, the fact is when Congress extended the sunset date and the VA acted to service-connect chronic lymphocytic leukemia, they were service-connecting a disease pursuant to that exact subsection that was expressly incorporated in the consent decree. So you're saying that the parties or certainly the judge intentionally left out any kind of a termination date in the decree. Is that what you're saying? That's true in the sense of the wording didn't have a termination date. Right. And the wording said any disease service-connected in the future pursuant to that subsection of the Agent Orange Act, meaning that the logical implication is the consent decree wouldn't apply unless that subdivision was no longer in effect and the VA was no longer able to service-connect any disease pursuant to that subsection. That is our and the VA's interpretation of the consent decree. You concur, I assume, that Judge Henderson retained jurisdiction over the decree? Absolutely. He's exercised that jurisdiction three or four times since the consent decree was entered. And he expressly incorporated the terms of the consent decree in the final judgment, which is what gives him continuing exclusive jurisdiction to interpret his consent decree. The VA also faults. Let me just follow up just one thing. Appeals that were taken with respect to the consent decree all went to the Ninth Circuit, did they not? Correct. And when did the statute referring regulations, construction of regulations, to the Federal Circuit, when was that enacted? I'm not sure I understand. What I'm trying to find out is whether, I think it's Section 38 U.S.C. 502, did that was that enacted after the date of the consent decree or before? No, that was enacted before the date of the consent decree. So the fact that the fact that the construction of the consent decree went to the Ninth Circuit before without objection, presumably from the Veterans Department, would at least argue that even though I don't know whether the regulation is being construed, that may be the issue here. But certainly there was an understanding at that point that the Ninth Circuit had jurisdiction. Absolutely, Your Honor. The parties, after passage of the Federal Circuit jurisdictional statute, agreed to this consent decree and agreed that the district court would have continuing jurisdiction over it by expressly incorporating the terms of the consent decree in the final judgment. But at that point, there was no contention of a violation of the regulation, was there? No. That occurred way after the consent decree was entered, and it occurred after this Court ruled the last time this case was before this Court. The VA faults the district court for relying as an aid in construction on the remedial purpose of the consent decree. This Court held five years ago that in interpreting the consent decree to apply to prostate cancer, whose association with Agent Orange wasn't recognized until 1996, that that interpretation serves the remedial purpose of the consent decree by helping ensure that any delay in the effort to determine Agent Orange's devastating effects due to VA's issuance and defense of its earlier invalid regulations shall not be borne by ailing veterans. The district court's ruling on CLL serves the exact same remedial purpose. Well before the initial sunset date, the VA secretary asked the VA in its next report, asked the VA, asked the National Academy of Sciences in its next report, the fifth report, to separately review the scientific evidence concerning the association between Agent Orange and one particular type of leukemia, chronic lymphocytic leukemia. But the fifth report was delayed. The congressional deadline for the fifth report was before the initial sunset date, but the report wasn't completed until after the initial sunset date, but by which time Congress had amended it so that it was 2015. The fifth report found there was association between CLL and Agent Orange based on seven scientific studies published between 1982 and 2001, all published before the previous NAS report. Thus the district court's interpretation of the consent decree to include what Agent Orange agreed five years ago was the remedial purpose of the consent decree. Finally, the VA focuses on ‑‑ So let me just see if I understand that last argument. Are you saying that even if the act had not been extended, that the CLL determination would have been covered? That's exactly what I'm saying, Your Honor. That was the ‑‑ even if Congress hadn't extended it, which of course they did, in part probably because the fifth report was delayed, the parties expected, you know, the VA is relying here on the expectations of the parties back in 1991 when they entered the consent decree. Now, I think the parties knew that it was possible for Congress to extend the sunset date, but let's say that wasn't a possibility. Even then, the parties expected that the VA would service connect diseases based on five full National Academy of Sciences reports, because that's what the original act said would be required. And that's where you're relying on the language in the future in the consent decree? Correct. Correct. Did Judge Henderson rule on that argument? Yes, he did. He agreed with us that that also supported his construction of the consent decree, but it was mainly based on the wording of the consent decree. Paragraph three was the primary. These are two totally independent arguments. One, if the consent decree had not been extended, this study, which was done pursuant to the decree before it expired, would be covered. That's exactly right. The second argument is that even without that, because the decree was extended. Well, that's really the first argument, is because it was extended. Well, whichever way you put it, they're two independent arguments. All right. Thank you. Finally, the VA relies on, says the consent decree, or at least the district court's interpretation of it, transgresses the California contract law principle that changes in law which add a burden on a party to a preexisting contract, cannot alter the terms of the contract unless the changes apply to remedial or procedural provisions, which I believe the consent decree is a remedial provision. But at any rate, there's no transgression of this principle because the extension didn't add a burden on the VA that it didn't undertake when it signed the consent decree to pay retroactive benefits for all diseases service-connected under subsection B. And as I indicated, it's especially true for chronic lymphocytic leukemia that there's no added burden on the VA. Because the original Agent Orange Act required five National Academy of Sciences reports before the initial sunset date, and the VA fully expected and undertook the burden to pay retroactive benefits under the consent decree for all disability service-connected as a result of the five reports or any extension thereafter. If there are no further questions, Your Honor. Are you still asserting your argument that there's no appellate jurisdiction? Yes, we are, Your Honor. And do you really want to go back and have the government go into contempt proceedings and then appeal and be back here in six months or a year or whenever with the same arguments? Your Honor, the – there are proper – there are ways to go through the appellate interpretations or disagreements about consent decrees, and there are improper ways. I'm afraid I agree with Judge Noonan about the process the VA used here. The VA unilaterally interpreted the consent decree the way they wanted to interpret the consent decree without consulting or going to filing a Rule 60B motion or even a motion for clarification with the district court judge. Now they have to live with the consequences of their actions. And so – So you don't want us to settle this issue? You want us to settle it in six months or a year? Your Honor, we are raising that jurisdictional argument. And that's our belief, and we're sticking with that argument, but we believe – I'm glad you're sticking with it. I'm just asking whether you really think it's to your benefit. If I knew the way the Court would rule, for sure, I'd – Well, you'll have the same question in six months or a year. I understand. If you go back and you have contempt proceedings, you're going to be right back here, and we're going to keep jurisdiction over the case in this panel. And it's got the same – it'll have the same number, and you're going to have the same problem. I understand, Your Honor. The – since they – Well, you'll just – You might not have the same judges. Well – But the VA is about halfway through re-adjudicating these chronic lymphocytic leukemia claims and paying retroactive benefits because its request for a stay was denied. Hopefully, if the Court were to rule that this is not subject to the Ninth Circuit's jurisdiction, the VA would complete the process and – If we don't assert jurisdiction, you're trying to moot the case. I'm not trying to moot the case. No, but I mean, your argument is that that was completely complied, and therefore it'll really have been a final action. No, the VA would still – the VA would be able to, I suppose, argue, go back to the judge and say, we'd like to take these benefits back from the people we gave them to. But that's not very practical, to try to get benefits back. That's why I don't think the case would come back. But that's an argument for finality, practical finality that Judge Posner doesn't like. But we'll look to Judge Newman instead of Judge Posner. I understand, Your Honor. Isn't there a case called Short against the city of San Francisco where the Ninth Circuit endorses practical finality? I think there is. It's neither side cited, but the law clerks have discovered it. Well, I'm afraid I'm unfamiliar with the case, Your Honor. Yeah, the reality is I join my colleagues in being puzzled as to why you don't believe that practical finality occurs here. There are quite a few cases, even Supreme Court cases, Gillespie v. U.S. Steel Corp., Zucker v. MaxiCare Health Plans, which is one of our cases. And the reality is here, the practical finality doctrine is going to apply where the case was of marginally final order. We certainly have that here. Dispose of an unsettled issue of national significance. We certainly have that here. Three, review implemented the same policy Congress sought to promote in 1292b. We have that here. And the finality of the issue was presented to the appellate court until argument on the merits, thereby ensuring that policies of judicial economy would not be served by remanding the case with an important unresolved issue. Doesn't that really fulfill all the prongs necessary to find practical finality in this case? I gather the VA concurs that it does. I guess I can say of all three arguments the VA is making, that the Federal Circuit has jurisdiction, that if it doesn't, this Court has jurisdiction, and the argument that the district court was wrong, that second argument you're focusing on is the strongest of the VA's three arguments. So you have a practical finality of acceptance of that argument. Yes. I just thought that would be a fair way to characterize my position. Are there any other? Thank you, counsel. Thank you. All right. Your time's up, but we'll give you five minutes. Thank you, Your Honor. I appreciate that, because I do. There are a number of points that I would like to address. First of all ---- It says two minutes, but you can have five. Thank you. Five. First of all, the ---- this ---- what VA has done here, these are clearly regulations at issue. Plaintiff is using the term substantive rule of general applicability as a kind of talisman. That was a phrase that was used in the government's brief, but it was not ---- it was simply characterizing the regulation that we have here. There's no requirement that it be a substantive rule of general applicability, as long as it's a regulation within the meaning of the statute, which is something covered by 5 U.S.C. 552A1 or 5 U.S.C. 553, and that is clearly true. That is what we have here. But don't those sections speak to regulations of general applicability? Well, they are. Probably the Administrative Procedure Act, isn't it? It is the Administrative Procedure Act, but yes. But we have ---- we have rules of general applicability here, because the regulations make generally applicable VA's determination that as of ---- that the consent decree does not apply after the expiration date of the ---- Does it apply to anything other than this one consent decree? No. The regulations, both the CLL regulation and 38 CFR 3.816 only deal with this issue, with the NEMR situation. Are there any cases you're aware of in which the term of general applicability has been construed and it's been applied to anything as narrow as a single consent decree? Well, of course, it's not really true that it is, that it's even limited. Let me backtrack, because the ---- what the BEA was interpreting the BEA, the 2001 Benefits Extension Act, which kept alive the process, so in that sense it does go beyond whether or not the NEMR consent decree continues with respect to retroactive benefits. VA was still construing as a generally applicable matter what the requirements were under the Benefits Extension Act of 2001 regarding the whole ---- the process of service-connecting diseases. And that would go on regardless ---- that goes on apart from the NEMR consent decree. That is simply by virtue of the Benefits Extension Act of 2001. Turning to the ---- also I would emphasize that there have been no prior regulations involved or challenged in this case, so it's really a red herring to suggest that because this has never come up before, that some sort of meaning should be attached to that. Finally, on jurisdiction, I would note that the consent decree itself states on page 7, which is reproduced in the excerpts of record at page 7, that nothing in the final stipulation order is intended by the parties to waive arguments concerning the Court's jurisdiction after August 6, 1991, except that the parties agree not to dispute the jurisdiction of the Court to enter final judgment in accordance with the terms of that paragraph. So to suggest that somehow that the VA is acting out of sync with the consent decree by making this jurisdictional argument is ---- Kennedy. I think the suggestion was because it wasn't raised on appeal in the prior cases. That didn't involve a regulation, though. The prior case didn't involve a regulation. There was no challenge to a regulation. That was strictly interpretation of the consent decree. There was no relevant regulation involved, Your Honor. Turning to the merits, the ---- there was a one-year time lag between the way the statute was written, the Agent Orange Act of 1991. There was a one-year time lag built in. The provisions, the service connection by VA provision 1116b expired a year before the last ---- the deadline for the last NAS report. So it clearly ---- Congress did contemplate that kind of lag, and it was built into the statute. So no nefarious purpose or anything can be interpreted by virtue of the VA or can be suggested by virtue of the VA's position here, because the VA couldn't have service-connected the CLL because it didn't have the final NAS report at the time the VA's obligations under the Agent Orange Act of 1991 expired. And ---- So you dispute what your opposing counsel said about the CLL, that that was known and would have applied even under the non-extended Agent Orange Act? Yes, Your Honor. That's simply not correct. Under the ---- the plaintiff now is suggesting that somehow the consent decree would have continued of its own force no matter what, and there's no ---- I don't think that's what he's saying. I think he's saying that, if I understood it correctly, that the CLL, there were five reports, I think, from the appropriate scientific community members that would have qualified CLL for treatment under the consent decree before the original Agent Orange Act expired. Do you dispute that? Well, yes, Your Honor, that those would have ---- the NAS itself did not consider them sufficient because they did address, as we pointed out in our reply brief, they addressed CLL previously and yet never determined that, in their view, a sufficient scientific and medical connection had been made. So you dispute it, then? Yes, Your Honor, very, very vigorously. Finally, the district, notwithstanding ---- May I go back to that question a minute?  The studies that ultimately led to the addition of the additional disease, those studies, were they started during the ---- prior to the expiration of the original Act? Yes, Your Honor. I believe that they were. I can't state that. I'm not sure the record reflects that clearly. But I ---- actually, I can't speak to that with any degree of certainty. I would think that ---- Because you can have an Act that has some effect after it's expired if things were started during the period of the Act, if the Act so provides. And that, as I understand it, is their argument, that the decree says that if it's done in the future pursuant to the Act, to the Agent Orange Act, and that they read that part of the decree as meaning that if you make the connection in the future after the Act's expired pursuant to the Act because there were studies that started during the Act, there were studies that were provided for and implemented during the Act, and you make the connection afterwards that that conforms with the consent decree. But, Your Honor, even the district court didn't embrace that reasoning, nor would that be consistent with the normal standards for construing consent decrees, because that would be totally open-ended. Even the district court recognized that under its and the party's mutual expectation, the retroactive benefits at the time the consent decree was entered into would have ended with the expiration of the Agent Orange Act. And that really ---- that should be dispositive here. But this latest argument really completely unhinges the consent decree from any kind of statutory mooring and leaves it floating really truly potentially in perpetuity. And that ---- Kennedy, I don't know, not if you didn't start the studies or conduct them during the period of the Act. As I understand this second argument, that's what they're saying. It's because the studies were conducted pursuant to the Act. Your Honor, that suggests that any ---- that conceivably any disease that was mentioned that was considered at all, however fleetingly, by N.A.S. at any time during the period ---- Kennedy, you said that Judge Henderson did not adopt that interpretation. No, Your Honor, Judge Henderson didn't adopt that interpretation, nor did he adopt their alternative argument regarding the timing of the N.A.S. report. And, indeed, those arguments go far beyond the Court's, in our view, erroneous interpretation of the consent decree. It's a bit of a rhetorical overkill, isn't it, to say that it would be in perpetuity, it would apply only to studies that were begun under the ---- before the sunset date of the original Act, and any further extension would depend upon Congress. Now, obviously, Congress can do a number of things if it wants, but that's not in perpetuity. Right. But we're talking about two different arguments here, and the inter ---- the in perpetuity argument really relates to the alleged statutory extending effect by virtue of the Benefits Extension Act of 2001. The other argument simply is, again, that really has no basis in the district court's holding or in its approach to the consent decree. If there are no further questions, I would urge the Court to reverse. Thank you, counsel. Thank you both very much. The case just argued will be submitted. The final case of the morning will be Okoro v. City of Oakland.
judges: Reinhardt, Noonan, M. Smith